Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
24654 N. Lake Pleasant Pkwy.
Suite 103-467
Peoria, AZ 85383

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Anne Pogue*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

|  |  |
|---|---|
| Anne Pogue,<br><br>       Plaintiff,<br><br>    v.<br><br>The Prudential Insurance Company of America; Valitas Health Services, Inc.; Valitas Health Services, Inc. Employee Term Life, Accidental Death and Dismemberment and Dependents Term Life Coverage Plan,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT** |

    Plaintiff, Anne Pogue (hereinafter referred to as "Ms. Pogue"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

    1.    Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. § 1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### Parties

2.      At all times relevant to this action, Ms. Pogue was a resident of Yavapai County, Arizona.

3.      Upon information and belief, Defendant Valitas Health Services, Inc., a Tennessee corporation (hereinafter referred to as the "Company"), sponsored, administered and purchased a group life insurance Policy (hereinafter referred to as the "Policy"), which was issued to the Company in the State of Tennessee, and the Policy is fully insured by Defendant The Prudential Insurance Company of America (hereinafter referred to as "Prudential").

4.      The specific Prudential group life insurance Policy is known as Group Policy No. G-43768 (*See* Exhibit "A").  The Company's purpose in purchasing the Policy was to provide life insurance coverage and welfare benefits for its employees.

5.      Through the group life insurance Policy, Ms. Pogue was afforded life insurance coverage for herself and her family/dependents, and the Policy contained a feature which waived any premiums that may have been due on the Policy (hereinafter referred to as the "Life Insurance Waiver of Premium benefit") if Ms. Pogue was found to meet the definition of "Totally Disabled" in the Policy, as is more specifically pled and explained in detail *infra.*

6.      Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Valitas Health Services, Inc. Employee Term Life, Accidental Death and Dismemberment and Dependents Term Life Coverage Plan (hereinafter referred to as the "Plan"). The Plan may have been created to provide the Company's employees with welfare benefits.

7.     At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8.     Upon information and belief, Prudential functioned as the claim administrator of the Plan and fully funded the Policy.

9.     Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

10.    Prudential operated under a structural financial conflict of interest because it fully insured the Policy and made every decision regarding whether Ms. Pogue was entitled to the Life Insurance Waiver of Premium benefit.

11.    In administering Ms. Pogue's claim, Prudential operated under dual and conflicting roles as the decision maker with regard to whether Ms. Pogue was disabled, and it is also the provider/payor of life insurance benefits if it found she was disabled pursuant to the definition of "Totally Disabled" as set forth in the Policy.

12.    Prudential's financial conflict of interest existed and manifested because if it found Ms. Pogue was disabled, it was then financially liable to provide life insurance coverage for Ms. Pogue and her family/dependents and to pay any claims that may be made, while also waiving any premiums due on the Policy.

13.    The Company, Prudential and the Plan conduct business within Yavapai County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

14.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

15.    Incident to her employment, Ms. Pogue was a covered employee pursuant to the Plan and the relevant Policy, and a "participant" as defined in 29 U.S.C. § 1002(7).

16.     In this action, Ms. Pogue seeks the reinstatement and continuation of the group life insurance coverage for herself and her family/dependents, as well as the Life Insurance Waiver of Premium benefit from the Plan under the relevant Policy pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

17.     In this action, Ms. Pogue also seeks any other employee benefits she may be entitled to from the Plan and/or from the Company as a result of being found disabled in this action and her benefits being reinstated.

18.     After being a loyal employee and working for the Company in the occupation of a Mental Health Technician, Ms. Pogue became disabled from working in that occupation and also disabled from working in any occupation on or about December 6, 2014.

19.     Ms. Pogue filed a claim for long-term disability benefits made under a group long-term disability Policy that was also issued, fully insured and administered by Prudential.

20.     Prudential approved Ms. Pogue's long-term disability claim and has found her disabled and paid her long-term disability benefits from June 6, 2015 through the present date.

21.     In Ms. Pogue's long-term disability claim, Prudential previously found that due to her disabling medical conditions, through the date of filing this Complaint, Ms. Pogue has remained continuously disabled from working in any occupation since December 6, 2014.

22.     Ms. Pogue asserts that Prudential's approval and *continued payment* of her long-term disability claim and benefits is relevant evidence for this Court to consider with regard to whether she is unable to work in any occupation and also illustrates the unreasonableness of Prudential's termination of her Life Insurance Waiver of Premium benefit.

23.     The approval and continued payment of Ms. Pogue's long-term disability claim and monthly benefit is evidence that its termination of her Life Insurance Waiver of Premium benefit was motivated by Prudential's financial conflict of interest and its desire to save money and to reduce liability.

-4-

24.     Following the onset of her disability, Ms. Pogue filed a claim for the Life Insurance Waiver of Premium benefit under the relevant Policy, which was entirely administered and funded by Prudential.

25.     Prudential made every decision regarding whether Ms. Pogue met the definition of "Totally Disabled" as that term is defined in the relevant Policy.

26.     Upon information and belief, the relevant Policy's definition of "Totally Disabled" governing Ms. Pogue's Life Insurance Waiver of Premium claim is as follows:

> "You are 'Totally Disabled' when, due to Sickness, Injury or both, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience."

27.     In support of her Life Insurance Waiver of Premium claim, Ms. Pogue submitted to Prudential, compelling and reliable medical and other evidence that supported her allegation she met (and continues to meet) the aforementioned definition of "Totally Disabled" as defined in the relevant Policy.

28.     Prudential initially approved Ms. Pogue's claim for the Life Insurance Waiver of Premium benefit and reinstated her group life insurance coverage from September 6, 2015 through August 7, 2020, when Prudential terminated her claim and benefit after erroneously finding that she no longer met the definition of "Totally Disabled."

29.     In a letter dated August 7, 2020, Prudential informed Ms. Pogue that it was terminating her Life Insurance Waiver of Premium claim/benefit beyond that same date after concluding that, "we have determined that you are no longer eligible for this benefit."

30.     Pursuant to 29 U.S.C. § 1133, Ms. Pogue timely appealed Prudential's August 7, 2020 termination of her Life Insurance Waiver of Premium claim/benefit on February 1, 2022.

31.     In support of her Life Insurance Waiver of Premium claim and appeal of the termination of her benefits, Ms. Pogue submitted a September 2, 2021 Prudential Attending

Physician's Statement completed by her board-certified treating primary care physician of over ***14 years,*** who has steadfastly and consistently informed Prudential that Ms. Pogue is disabled and has been unable to work in any occupation since she became disabled in 2014.

32.     In completing his September 2, 2021 Prudential Attending Physician's Statement, Ms. Pogue's board-certified physician answered "none" when asked to comment on the job category that best described Ms. Pogue's functional activities and ability to work.

33.     On the same Attending Physician's Statement, the physician answered, "no plan to return…" when asked to comment on Ms. Pogue's "Return to Work Effort."

34.     Ms. Pogue also submitted to Prudential a February 1, 2022 Checklist Letter completed by the same board-certified physician, who answered "yes" when asked to confirm whether it was his medical opinion that Ms. Pogue meets the definition of "Totally Disabled" set forth in the Prudential Policy.

35.     In support of her appeal, Ms. Pogue also submitted a June 12, 2020 Prudential Capacity Questionnaire completed by the same board-certified physician, who answered "No" when asked if Ms. Pogue is capable of full-time work capacity.

36.     Ms. Pogue's board-certified physician confirmed in the Prudential Capacity Questionnaire that his work restrictions and opinions regarding Ms. Pogue's total disability are "permanent" because she has reached maximum expected improvement.

37.     In support of her appeal, Ms. Pogue also re-submitted a September 28, 2015 narrative letter authored by the same board-certified physician, who confirmed, "I believe Miss Pogue is precluded from work in any environment…"

38.     Ms. Pogue also re-submitted to Prudential an August 11, 2016 narrative letter authored by the same board-certified physician, who opined in the letter that, "it remains my medical opinion that Ms. Pogue has been unable to work in any occupation since December 2014…this opinion will remain in place indefinitely."

39.     In support of her appeal and claim, Ms. Pogue also submitted her February 1, 2022 sworn affidavit wherein she confirmed that she remains unable to work in any occupation and her disabling medical conditions have not improved in any manner that allow her to return to any work since she last worked on December 6, 2014.

40.     For her appeal, Ms. Pogue also submitted updated medical records from her treating medical professionals that all confirm she remains "Totally Disabled" as the term is defined in the Policy, and that her disabling medical conditions have not improved in any manner that allow her to return to any work since her disability began.

41.     For her appeal, Ms. Pogue also submitted a list of her current medications, along with the adverse side effects/limitations they create for her and the reasons those side effects also preclude her from being able to work in any occupation.

42.     All of the reliable evidence Ms. Pogue submitted to Prudential consistently proves that she is unable to work in *any occupation* and that she continues to meet the definition of "Totally Disabled" as set forth in the Policy.

43.     In a December 22, 2016 letter (*See* Exhibit "B"), Prudential ***instructed and required*** Ms. Pogue to apply for Social Security disability benefits from the Social Security Administration (hereinafter referred to as the "SSA").

44.     Prudential informed Ms. Pogue in its December 22, 2016 letter that if she did not file a claim for SSA disability benefits, it would reduce her long-term disability benefit amount (and its liability to her) by an estimate of what her monthly SSA disability benefit amount may be.

45.     Prudential's requirement that Ms. Pogue file a claim for SSA disability benefits, when it knew she had to prove she was unable to work in *any occupation* by the SSA to qualify for those benefits, is probative and compelling evidence that Prudential believed Ms. Pogue also met SSA's definition of disability and that she was unable to work in any occupation that may exist within the national economy.

46.     The fact that Prudential believed Ms. Pogue was disabled and unable to work in any occupation and was entitled to SSA disability benefits is documented by Prudential's statement in its December 22, 2016 letter that if Ms. Pogue did not apply for SSA disability benefits it would begin reducing her long-term disability benefit by the estimated amount of her monthly SSA disability benefit.

47.     On September 21, 2017, the SSA approved Ms. Pogue's SSA disability claim *__without__* it requiring her to attend a hearing before an Administrative Law Judge.

48.     After reviewing all Ms. Pogue's evidence (which Prudential also has in its possession as of the date of filing this Complaint), the SSA concluded that since December 5, 2014 (her date of disability), she has been disabled and unable to work in any gainful occupation that exists within the national economy.

49.     Ms. Pogue is currently receiving SSA disability benefits and SSA has consistently found that she has been unable to work in *any occupation* since it agreed with her that she became disabled on December 5, 2014.

50.     The SSA's approval of Ms. Pogue's SSA claim is highly probative and relevant because it is evidence of an independent and unconflicted fact finder's decision.

51.     The SSA's approval of Ms. Pogue's SSA claim is highly probative and relevant evidence of Ms. Pogue's disability because SSA's definition of disability is similar, if not identical, to the definition of "Totally Disabled" set forth in Prudential's Policy.

52.     On September 27, 2017, Ms. Pogue informed Prudential her claim for SSA disability benefits was approved and she submitted a complete copy of the SSA's September 21, 2017 decision which found she became disabled on December 5, 2014, the date she last worked and the date she told Prudential that she became disabled.

53.     On February 1, 2022, as part of her appeal and in support of her Life Insurance Waiver of Premium claim, Ms. Pogue reminded Prudential that her SSA disability claim was approved by SSA based on the compelling nature and persuasiveness of her evidence alone

and without the agency requiring or needing her to to attend and testify at a hearing before an Administrative Law Judge.

54.   To afford Prudential a full opportunity to review all of Ms. Pogue's evidence that SSA considered in her SSA claim, she again submitted the SSA's September 21, 2017 decision approving her claim along with a ***complete copy*** of her SSA disability claim file.

55.   The substantive evidence supporting Ms. Pogue's SSA disability claim and SSA's finding that she is disabled *based solely on her evidence*, the same evidence Prudential was in possession of after she appealed the denial of her Life Insurance Waiver of Premium claim on February 1, 2022, is highly relevant and compelling evidence which not only proves that she meets the definition of disability in Prudential's Policy but also the unreasonableness and unlawfulness of Prudential's termination of her claim and benefits.

56.   As referenced above, Ms. Pogue filed her appeal on February 1, 2022 and through the date of filing this Complaint, Prudential has not made a decision on her appeal even though ERISA required Prudential to render a decision within 45 days of its receipt of her appeal.

57.   Prudential's failure to render any decision in Ms. Pogue's claim through the date of filing this Complaint, which is now ***more than five (5) months*** after the claim was appealed on February 1, 2022, is evidence of its failure to comply with ERISA as well as the unlawfulness and unreasonableness of its claims administration process.

58.   Prudential's failure to render any decision in Ms. Pogue's appeal and claim is evidence that it failed to act as her ERISA fiduciary and failed to afford her with the "full and fair" review required by ERISA.

59.   Prudential's failure to render any decision in Ms. Pogue's claim through the date of this Complaint, now ***more than five (5) months*** after the date her appeal was filed on February 1, 2022, violates ERISA's requirement that it provide a "full and fair" review.

60.     Prudential's failure to review Ms. Pogue's claim within the required ERISA timeframe referenced above following its receipt and review of the SSA's favorable decision is clear evidence that it did not act as her ERISA fiduciary which required it to administer the claim "solely in her best interests."

61.     All of the reliable evidence Ms. Pogue submitted to Prudential consistently and conclusively proves she is unable to work in *any occupation* and that she has consistently met and continues to meet the definition of "Totally Disabled" set forth in Prudential's Policy since she last worked on December 6, 2014.

62.     In two (2) separate letters dated February 1, 2022 and February 4, 2022, Ms. Pogue requested for Prudential to engage her in a "meaningful dialogue" during its review as required by Ninth Circuit law so she had an opportunity to cure any alleged deficiencies Prudential believed may have existed with the evidence she submitted in her appeal.

63.     Ms. Pogue sent the above letters to Prudential so it would afford her with the ability to perfect her claim as required by *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 972 (9th Cir. 2011) and *Montour v. Hartford Life & Accident Inc. Co.,* 588 F.3d 623 (9th Cir. 2009).

64.     Prudential failed to engage in a good faith "meaningful dialogue" with Ms. Pogue during its review because prior to the filing of this Complaint, it failed to inform her what evidence was necessary so she could cure any alleged deficiencies Prudential believed existed in her claim so it could be approved.

65.     In a letter dated February 8, 2022 (*See* Exhibit "C"), Prudential confirmed its receipt of Ms. Pogue's February 1, 2022 appeal and that "[it is] performing a thorough evaluation based on the information currently in file."

66.     As part of its review of Ms. Pogue's claim, Prudential obtained a medical records only "paper review" dated February 21, 2022 from a medical doctor of its choosing, named Kevin Kohan, D.O.

67.     In a letter dated March 16, 2022, Prudential provided Ms. Pogue with a copy of the medical records only "paper review" and the opportunity for her and her treating board-certified physician to respond, if they desired.

68.     In its March 16, 2022 letter, Prudential did not give Ms. Pogue any information on what needed to be addressed or what it thought was an issue that needed to be responded to in Dr. Kohan's report.  This is only one example of Prudential's failure to engage Ms. Pogue in a "meaningful dialogue."

69.     Ms. Pogue alleges that in her claim, as well as in other disability/Life Insurance Waiver of Premium claims Dr. Kohan reviews, based on the opinion he rendered in Ms. Pogue's claim, specifically that she was able to work with the restrictions and limitations he set forth in his report, Dr. Kohan operated under a conflict of interest because he is a long-time medical consultant for Prudential and/or for the disability insurance industry.

70.     Dr. Kohan's bias is evident in that although he stated Ms. Pogue was able to work in any occupation, he did not understand, realize or simply ignored the fact that his work restrictions and limitations for Ms. Pogue actually did not allow her to perform any work which exists within the national economy.

71.     Prudential also failed to realize or also ignored that Dr. Kohan's work restrictions and limitations did not allow Ms. Pogue to perform any work.

72.     Prudential's failure to fully, adequately and properly investigate and evaluate Dr. Kohan's work restrictions and limitations and the vocational issues in Ms. Pogue's claim violates its duty to provide a "full and fair" review under ERISA.

73.     As a result of Dr. Kohan's longtime relationship with Prudential and the disability insurance industry, Ms. Pogue alleges that based on the opinions he rendered in her claim (that she was able to work with the restrictions and limitations he set forth), Dr. Kohan was biased, and not impartial or independent as Prudential informed her was.

74.     Due to his long-time relationship with Prudential and the disability insurance industry, Dr. Kohan operated under a conflict of interest and may have had incentives to protect his own consulting relationship with Prudential and the disability insurance industry by providing biased medical records only "paper reviews," which selectively review and ignored evidence as he did in Ms. Pogue's claim.

75.     Dr. Kohan's conflict of interest and bias led him to render conclusory (i.e. she was able to work when his work restrictions and limitations did not allow her to) biased, unreasonable, implausible and adverse opinions to Ms. Pogue and her claim while using those same conclusory opinions which favored Prudential.

76.     In *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003), the Supreme Court warned about biased, conflicted insurance companies such as Prudential using doctors like Dr. Kohan, who are repeatedly retained  by noting, "Nor do we question the Court of Appeals' concern that physicians retained by benefits plans may have an 'incentive to make a finding of not disabled' in order to save their employers money and to preserve their own consulting arrangements."

77.     In a three (3) page letter dated April 25, 2022, Ms. Pogue responded to Prudential's March 16, 2022 letter and Dr. Kohan's report, detailing the numerous reasons she is unable to work in any occupation and the medical opinions that support this conclusion.

78.     With her April 25, 2022 letter, Ms. Pogue submitted to Prudential an April 20, 2022 narrative letter and response from her long-time treating board-certified physician who completed the medical questionnaires referenced above (paras. 32-38).

79.     In his April 20, 2022 response letter, Ms. Pogue's physician responded to Dr. Kohan's opinions by stating, "I completely disagree with Dr. Kohan's report…For [Ms. Pogue] to physically attempt what he says she can do, poses a serious risk to her health, her well-being and in my opinion is irresponsible."

80.     In her April 25, 2022 letter, Ms. Pogue informed Prudential that it should, "do the right thing and comply with federal law by acting as her ERISA fiduciary by finding she continues to be totally disabled and unable to work in any occupation as she has been for almost 6 years now."

81.     On April 29, 2022, Ms. Pogue submitted to Prudential her April 29, 2022 affidavit responding to Dr. Kohan's review of her claim and confirmed, "In my opinion it would be completely dishonest for Prudential to rely on Dr. Kohan's opinions over my long-time treating doctor…who is board-certified. He knows me better than any doctor and is the most qualified doctor to state (and he has accurately stated over many years) what I am able and not able to do either at work or at home."

82.     In her April 29, 2022 letter, Ms. Pogue again asked for Prudential to act as her ERISA fiduciary and reinstate her life insurance coverage and Life Insurance Waiver of Premium claim/benefit.

83.     In a letter dated May 20, 2022, Prudential provided Ms. Pogue with a copy of a May 5, 2022 Addendum completed by Dr. Kohan and the opportunity to respond to it, if she desired.

84.     In a letter dated June 15, 2022, Ms. Pogue submitted to Prudential a June 7, 2022 response to Dr. Kohan's Addendum authored by a vocational expert she retained who has 35 years of experience in the vocational industry, David Janus, MA, CDMS, CRC.

85.     After reviewing Dr. Kohan's opinions and limitations, Ms. Pogue's vocational expert, Mr. Janus (who has testified as a vocational expert in over 9,000 SSA Administrative Law Judge hearings), confirmed in his June 7, 2022 response that, "Given the May 5, 2022 amended restrictions and limitations from Dr. Kohan, ***Ms. Pogue is precluded*** from performing… all occupations that exist in the national economy." (emphasis added).

86.     On July 8, 2022 (*See* Exhibit "C"), when Prudential still had not made a decision on her appeal, Ms. Pogue advised it that, "according to our calculations, per ERISA's

regulations on your company's timeframe to render a decision on the appeal, Prudential's 90th day to do that is July 15, 2022. This date was calculated based on Ms. Pogue's February 2, 2022 appeal and submission of evidence, and the time the claim was tolled due to Prudential requesting information from Ms. Pogue during the appeal."

87.     In her July 8, 2022 letter, Ms. Pogue informed Prudential she expected it to, "…comply with ERISA and to fulfill its fiduciary duty to her by rendering a decision in her claim no later than July 15, 2022."

88.     As of the date of filing this Complaint, Prudential has not responded to Ms. Pogue's July 8, 2022 letter.

89.     Prudential's failure to respond to Ms. Pogue's July 8, 2022 letter is evidence of its failure to act as her fiduciary, failure to investigate the claim and failure to engage Ms. Pogue in the "meaningful dialogue" required by ERISA and Ninth Circuit law.

90.     As of the date of filing this Complaint, it has been ***forty (40) days*** since Prudential's last correspondence to Ms. Pogue, which was a letter dated June 10, 2022.

91.     As of the date of filing this Complaint, it has been ***one hundred and sixty-two (162) days***, including the days that were tolled during the review for Ms. Pogue to submit her evidence, since Prudential confirmed it was reviewing her appeal on February 8, 2022.

92.     Prior to filing this Complaint, Prudential has not made a decision in Ms. Pogue's appeal, even though the mandatory timeframe for rendering one ***expired on July 15, 2022*** (90 days from the date Prudential confirmed receipt of Ms. Pogue's February 1, 2022 appeal, ***excluding*** the days that were tolled during the review for Ms. Pogue to submit her evidence).

93.     Prudential's failure to make any decision in Ms. Pogue's appeal violates not only ERISA, but also the express terms of its own Policy which states, "Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential

determines that special circumstances require an extension of time." (*See* Exhibit "A," page 68).

94.    Due to Prudential's failure to render a decision in Ms. Pogue's appeal and failure to provide a reasonable claims process or a "full and fair" review as required by ERISA, with the filing of this Complaint, Ms. Pogue deems her claim and appeal to be exhausted pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

95.    The standard of review in this matter is *de novo* because at the time Ms. Pogue filed this Complaint, due to Prudential's failure to provide a reasonable claims process in not making any decision in her appeal, she has exhausted all of her administrative remedies and is permitted to file this civil action. [1]

96.    In evaluating Ms. Pogue's claim on appeal, Prudential owed her an ERISA fiduciary duty and was obligated under ERISA to administer her claim, "solely in [her] best interests..."

97.    If Prudential had acted as Ms. Pogue's ERISA fiduciary and administered the claim "solely" in her best interests by properly crediting her reliable medical, vocational and other evidence, it would have timely approved her appeal and reinstated her Life Insurance Waiver of Premium claim.

---

[1] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006) held, "In general, we review *de novo* a claim for benefits when an administrator fails to exercise discretion. *See Jebian*, 349 F.3d at 1106 (holding that an administrator failed to exercise its discretion when it did not make a benefits decision within the 60 days specified by the terms of the plan and the applicable regulation, so that the ultimate decision rendered was "undeserving of deference"). Other circuits have also held that review is de novo when the plan administrator fails to exercise discretion. *See Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005)(holding that a "deemed denied" claim, in which the administrator did not issue a decision within the time required by the regulations, constituted "inaction," which was not an exercise of discretion and which therefore was entitled to no deference; de novo review applied); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003) (noting that "[d]eference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision"); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) ("Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion . . . ."). *See Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998 (7th Cir. June 25, 2019).

98.     Due to its aforementioned financial and other conflicts of interest, Prudential's review is evidence that its dual roles and conflicted financial decision making led it to administer Ms. Pogue's claim solely in *Prudential's best interests* and not in hers.

99.     Prudential's conflict of interest as the decision-maker and provider/payor of life insurance benefits precluded it from administering Ms. Pogue's claim in her best interests as an unconflicted reviewer would have. [2]

100.    Prudential's conflict of interest is apparent and obvious given the fact that it failed to approve Ms. Pogue's claim after it received Mr. Janus' (her vocational expert) report on June 15, 2022, who informed Prudential why she was "Totally Disabled" based solely on Dr. Kohan's work restrictions and limitations which are set forth in his report.

101.    Prudential's failure to make any decision in Ms. Pogue's appeal and failure to engage her in a "meaningful dialogue" during its review is evidence that its conflicted and biased review was motivated by its financial conflict of interest as referenced herein.

102.    Ms. Pogue alleges that Prudential's review was neither full nor fair because it violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for many reasons including, but not limited to: failing to make any decision as required by ERISA in Ms. Pogue's appeal; failing to comply with the terms of its own Policy regarding when Prudential was required to make a decision; by failing to accept the opinions and work limitations of its own reviewer, Dr. Kohan, which do not allow Ms. Pogue to work in any occupation; by failing to credit Ms. Pogue's treating physician's responses to Dr. Kohan's report, which proved she is unable to work in any occupation; by failing to credit Ms. Pogue's own affidavit, her

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

statements regarding Dr. Kohan's report and that she remains unable to work in any occupation; by failing to credit and accept Ms. Pogue's vocational expert's report and his opinion that based on Dr. Kohan's work limitations, Ms. Pogue is disabled and not able to work in any occupation; failing to credit Ms. Pogue's credible, reliable evidence including not considering, evaluating and giving any weight to the SSA's approval of her SSA claim or the rationale for why SSA's approved her claim based solely on her medical records; by failing to retain a truly independent third party vendor to obtain medical records reviews in Ms. Pogue's claim; by failing to have Ms. Pogue's claim reviewed by truly independent medical professionals; by failing to have Ms. Pogue's claim reviewed by a vocational expert who considered all the evidence in her appeal including the fact that Dr. Kohan's work limitations did not allow her to perform any work; by abdicating and outsourcing its ERISA fiduciary duty and retaining biased companies and medical professionals to be involved in the review of Ms. Pogue's claim; by failing to fully, properly, fairly and adequately investigate Ms. Pogue's claim; by failing to request for Ms. Pogue to attend an Independent Medical Examination when the Policy allowed for one and Ms. Pogue's disabling medical conditions, her subjective complaints and work limitations were most accurately understood by having her undergo an in person examination by a medical professional of its own choosing; by not having a vocational report/evaluation from its own vocational expert to assess whether Ms. Pogue was disabled based on Dr. Kohan's report and opinions; by de-emphasizing her medical and other evidence which supported Ms. Pogue's claim and its approval; by disregarding and/or failing to consider Ms. Pogue's disabling subjective and self-reported complaints/symptoms/limitations; by failing to consider the side effects from Ms. Pogue's medications that preclude her from working in any occupation; by failing to consider the combined effect that all of her medical conditions and resulting limitations documented in her medical, vocational and lay-witness evidence had on her ability to work in any occupation; and by failing to engage Ms. Pogue in a "meaningful dialogue" so she and her treating and/or

evaluating medical professionals could *adequately* respond to the issues that Prudential believed existed in her claim as a result of Dr. Kohan's report so her claim could be approved.

103.    Prudential's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Ms. Pogue's reliable evidence which proved she met and continues to meet the definition of "Totally Disabled" in the Policy and this evidence should have allowed Prudential to render a timely approval of her claim.

104.    Ms. Pogue alleges a reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested as a result of the dual roles Prudential undertook as the decision maker and the provide/payor of benefits in her claim.

105.    Prudential's conflict of interest provided it with a financial incentive to terminate Ms. Pogue's Life Insurance Waiver of Premium claim, because every dollar it saved in not continuing to waive premiums on Ms. Pogue's life insurance and not having to pay a potential life insurance claim, now represents profit for Prudential.

106.    Prudential's self-serving actions are similar to the conflicted and unlawful review by another disability insurance company where the Ninth Circuit criticized it by stating, "The plan with a conflict of interests also has a financial incentive to cheat." *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 970 (9th Cir. 2011).

107.    Prudential's financial conflict of interest manifested when it initially terminated Ms. Pogue's claim and then it failed to render any decision on her appeal.  In searching for reasons to deny Ms. Pogue's claim rather than approving it, Prudential saved a *significant amount of money* in unpaid benefits to her.

108.    With regard to whether Ms. Pogue meets the definition of "Totally Disabled" set forth in the relevant Policy and/or Plan, as stated above, the standard of review is *de novo*, because at the time she filed this Complaint, due to Prudential's failure to provide her with

a reasonable claims process and failure to render a decision on her appeal, Ms. Pogue deems her claim exhausted pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

109.    In the event the court finds the Policy lawfully confers discretion, Ms. Pogue asserts the standard of review should be *de novo* because Prudential did not provide a "full and fair" review as required by ERISA, and its ERISA violations are so flagrant and egregious they justify *de novo* review under Ninth Circuit law

110.    Ms. Pogue alleges that Prudential failed to provide a "full and fair" review as required by ERISA, and that its termination of her Life Insurance Waiver of Premium benefits beyond August 7, 2020 is a *de novo* wrong decision because her evidence proves that she did meet and continues to meet the definition of "Totally Disabled" set forth in the Policy.

111.    Regardless of the standard of review, the Court should allow discovery so it may properly weigh and consider the nature, extent and effect that *any* conflict of interest and/or any ERISA procedural violation had in influencing Prudential's initial decision to terminate Ms. Pogue's Life Insurance Waiver of Premium claim, as well as its failure to render any decision in the appeal of the termination of her claim.

112.    Regardless of the standard of review, Ms. Pogue is entitled to discovery regarding Prudential's conflicts of interest/bias, the conflicts of interest/bias of any third-party vendors Prudential may have retained and the conflicts of interest/bias of any individual who were involved in the review of Ms. Pogue's claim and who may have influenced and led to Prudential's failure to provide a reasonable claims process and to make a decision in Ms. Pogue's claim.

113.    Ms. Pogue asserts that any third-party vendor retained by Prudential, and in turn, any medical professional that vendor hired to review evidence in Ms. Pogue's claim, operated under a conflict of interest due to their business relationship with Prudential and their relationship with the disability insurance industry in general.

114.    Regardless of the standard of review, Ms. Pogue is entitled to discovery regarding Prudential's compliance with the terms of its Policy, as well as the numerous ERISA procedural violations committed by Prudential during Ms. Pogue's appeal.

115.    As a direct result of Prudential's decision to terminate Ms. Pogue's Life Insurance Waiver of Premium benefit, as well as its failure to make  a decision in her appeal, she has been injured and suffered damages in the form of lost Life Insurance Waiver of Premium benefits and continued life insurance coverage for herself and her family/dependents from Prudential, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, as well as from any other Company Plan and/or the Company as a result of being found disabled in this matter.

116.    Upon information and belief, Ms. Pogue alleges other potential non-disability employee benefits may include, but are not limited to, health insurance benefits/coverage, other insurance related coverage/benefits, retirement benefits and/or a pension.

117.    Ms. Pogue seeks any and all employee benefits she is due and owed, including but not limited to the reinstatement of the life insurance coverage for herself and her family/dependents before Prudential erroneously terminated her claim. Ms. Pogue also seeks the waiver of any premiums that may be due on the aforementioned life insurance coverage, and any other benefit she may be entitled to and due from any Defendant as a result of being found disabled and prevailing in this matter.

118.    Ms. Pogue does not seek long-term disability benefits from Prudential as that claim has been approved and she is currently receiving those benefits from Prudential.

119.    Pursuant to 29 U.S.C. § 1132, Ms. Pogue is entitled to the reinstatement of her life insurance coverage for herself and her family/dependents and the reinstatement of her Life Insurance Waiver of Premium benefit, as well as any other non-disability employee benefits she may be entitled to, including prejudgment interest, reasonable attorney's fees and costs from Defendant.

120.    Ms. Pogue is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Prudential's termination and nonpayment of benefits.

WHEREFORE, Ms. Pogue prays for judgment as follows:

A.    For an Order finding the evidence in Ms. Pogue's claim is sufficient to prove that she met and continues to meet the definition of "Totally Disabled" set forth in the relevant Plan and/or Policy, and that she is entitled to life insurance coverage and Life Insurance Waiver of Premium benefits provided by the Policy, and any other employee benefits she is entitled to as a result of that Order, from the date Prudential terminated her benefits, through the date of judgment with prejudgment interest thereon;

B.    For an Order directing Defendants to continue providing Ms. Pogue the aforementioned life insurance coverage and the waiver of any premiums that may be due on that life insurance, along with any other employee benefits until such a time as she meets the conditions for the termination of benefits;

C.    In the event the Court is unable to render a decision in Ms. Pogue's claim regarding any issue, she seeks an Order remanding her claim and this case to Prudential so it can review the claim again in a manner consistent with the Court's Order;

D.    For an Order awarding Ms. Pogue her attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E.    For such other and further relief, equitable and otherwise, as the Court deems just, proper, and appropriate.

DATED this 20th day of July, 2022.

SCOTT E. DAVIS. P.C.

By:    */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff